WESTERN UNION TELEGRAPH CO. v.
SIMS. (No. 28.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 30, 1915. Rehearing Denied Jan. 6, 1916.)

1. TELEGRAPHS AND TELEPHONES ⊙═65 —
FAILURE TO DELIVER TELEGRAM—MENTAL
ANGUISH—ACTION—PROOF REQUIRED. ·

Where, in an action to recover for mental anguish occasioned by the failure of a telegraph company to deliver a message sending money to plaintiff's daughter to enable her to come home from another town, sent by plaintiff in response to a telegram from her that she was sick, the anguish being occasioned by the fact that she was prevented from coming home by the failure to deliver the message, and that plaintiff feared she would not have proper attention, and that she would have come home had she received the money, it appeared that the daughter had proper attention and would not have come home had she received the money, plaintiff cannot recover, since under the rule that one cannot recover damages for mental anguish based upon imaginary conditions which in fact do not exist, plaintiff was required to show that had his daughter received the money she would have returned home.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54–60; Dec. Dig. ⊙═65.]

2. TELEGRAPHS AND TELEPHONES ⊙═57 —
JOINT AGENT TAKING MESSAGE—LIABILITY.

Where plaintiff delivered such message for sending to the joint agent of the telegraph company and railroad company who sent it over the railroad company's wire to the railroad agent at destination because there was no money office of the telegraph company at the sending point, of which facts plaintiff was unaware and not informed by the agent, defendant could not escape liability for failure to deliver, on the ground that the message had never been delivered to it, since a telegraph company holds itself out as a dispatcher of messages for hire, which is not true of a railroad company, and plaintiff therefore had the right to presume that his delivery to such joint agent was proper.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 38; Dec. Dig. ⊙═ 57.] .

Appeal from Hardin County Court; W. W. Dies, Judge.

Action by J. F. Sims against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Judgment reformed.

F. J. & C. T. Duff, of Beaumont, for appellant. R. L. Durham, of Beaumont, for appellee.

MIDDLEBROOK, J. On the 3d day of June, 1915, appellee, J. F. Sims, brought suit against the Western Union Telegraph Company in the county court of Hardin county, Tex., for $800 damages, $500 alleged to be actual, and $300 exemplary damages, alleging that the defendant, Western Union Telegraph Company, was negligent in the delivery of a message to his daughter, Miss Charles Sims, at Lake Charles, La., in reply to the following message:

"Had chill last night, and fever ever since arrived here. Doctors advise not to work, so wire me five dollars. Am coming home.
                                "Charles."

This message was received at Kountze on the 26th day of June, 1913, and as soon as he received the message, Mr. Sims, father of Charles Sims, went to the telegraph office at Kountze, and gave the operator, who was both agent for the Western Union Telegraph Company and for the Texas & New Orleans Railroad Company, $5, with instructions to wire it to his daughter, Charles Sims, at Lake Charles, sufficient money to be taken out of

the $5 to purchase a railroad ticket from Lake Charles to Kountze, and for the balance of the $5, $2.45, to be paid to his daughter.

The Western Union Telegraph Company had no money office at Kountze, and the agent there wired the $5 by the railroad company's wire to the railroad agent at Lake Charles, with instructions to furnish Charles Sims ticket from Lake Charles to Kountze, and to give the balance of the $5, $2.45, to Charles Sims. The evidence shows this was not done.

Mr. J. F. Sims met several trains upon which he expected his daughter to return to Kountze, after he sent the message, but she did not return, and he alleges great mental anguish on account of being disappointed in his daughter's return, that she was among strangers, that he feared she would not have proper attention, and that had she received the $5 she would have returned home. The telegraph company answered by general demurrer, some special exceptions, and plea of not guilty. Some of the special exceptions should have been sustained, but it will not be necessary to dispose of that feature of the case under our disposition of the case as a whole. The appellee, J. F. Sims, has filed no brief in the case.

[1] The plaintiff, appellee, must recover, if at all, upon the allegations of his pleadings, the essential features of which are that by reason of the negligent delay of the telegraph company in delivering his message and money to his daughter, she was prevented from returning home, and he expected her to return on each train after he sent the message, and because she did not return, it aroused grave fears in his mind, and he suffered great mental anguish because his daughter was among strangers, and because she did not return in response to his message. It is a well-settled rule in this state that one cannot recover damages for mental anguish based on imaginary conditions, which, in truth, did not exist. In other words, if the plaintiff recovers, he must show by a preponderance of the testimony that the allegations of his petition, in laying his damages, are true. In the instant case it would be necessary for him to show that had his daughter received the money and the ticket, she would have returned home.

Miss Charles Sims testified as follows:

"My name is Charles Sims. On the 22d day of June I sent a telegram to my mother. I called at the Western Union Telegraph Company for a reply. At the time I had fever, and was delirious for several days, and not hearing from my parents, I did not know what to do. I was a stranger in Lake Charles. I had enough money to send the message, and also had money until several days after I had sent it. I had enough to have come home on. After conversing with my father over the telephone, I called at the telegraph office for about two weeks, and they had my address and telephone number, and the agent also wired Kountze. I sent the message for the purpose of informing my mother and father of my sickness and of my condition. While in Lake Charles I stayed at Dr. Lyons. I did not know Dr. Lyons when I

181 S.W.—51

went there. Dr. Watson was my physician. He gave me the proper attention. I had all the drugs and the medicine I needed. A colored woman waited on me. Mrs. Lyons stayed near my room and talked to me and did all she could for me. They were very nice to me, and saw that I had the proper diet. I was delirious for about three days after sending the telegram, and was confined to my bed at that time. I sent the message early in the morning, and became delirious about three minutes after sending it. During that sickness I was confined to my bed for about two weeks, although I came to the phone and talked with my father. I was too sick to travel. At the time I sent the message I had enough money to come home on. I went to the Western Union and asked if they received a reply to my message the first time I was able to leave the house. This was about two weeks after I sent the message. My father called me up over the phone on Saturday morning. I told him that I had been sick. I was not acquainted in Lake Charles when I went there. I stayed at Dr. Lyons' house from the time I arrived there until I left. At the time I wired my father, the Western Union Telegraph Company knew where I was in case of a reply. I gave them my telephone number, and Dr. Lyons' residence is in the heart of the city. I gave the agent my telephone number when I gave him the message. The message was written on a plain piece of paper, and I wrote the telephone number on the paper. My purpose in sending the telegram was to have my father or mother or some of my people come to Lake Charles. At the time of sending the message I was not in a condition to come home. After I became delirious, I knew that I could not come home, even with an attendant. For three days I was delirious that time. I have had money wired me here at Kountze. My stepbrother wired me $10. I don't remember whether it was a railroad wire or Western Union, but it was some time last May."

The above is the entire testimony of Miss Charles Sims. This testimony absolutely disputes the plaintiff's contention in this case, that his daughter would have returned home had she received the $5. Plaintiff's first assignment of error, to wit:

"Before there can be any recovery for mental anguish by reason of the nondelivery of a telegram, the evidence must show that if said message had been delivered, there would have been a different result"

—must be sustained. Telegraph Co. v. Smith, 88 Tex. 9, 28 S. W. 931, 30 S. W. 549; Telegraph Co. v. Landry, 108 S. W. 461; Telegraph Co. v. Campbell, 36 Tex. Civ. App. 276, 81 S. W. 580; Telegraph Co. v. Adams, 80 S. W. 93; Telegraph Co. v. Morrison, 33 S. W. 1025.

It follows, necessarily, that appellant's second assignment of error, to wit:

"The undisputed evidence showing that Miss Charles Sims, the daughter of plaintiff, during her illness, was among friends, had every attention that her condition demanded, was supplied with all the necessary medical attention and drugs, the court erred in rendering judgment in favor of the plaintiff"

—must also be sustained, for imaginary fears cannot be the basis for the recovery of damages for mental anguish. Hart v. Telegraph Co., 53 Tex. Civ. App. 275, 115 S. W. 638, and authorities therein cited. The disposition we have made of the first two assignments of error by appellant, disposes of the case, except as to the $5 delivered to the appellant by the appellee.

[2] The third assignment of error by appellant is to the effect that the evidence not showing that J. F. Sims ever delivered the $5 to the defendant telegraph company to be transmitted to his daughter by said company, but on the contrary showing that the money was delivered to the T. & N. O. Railroad agent, and transmitted by him to the railroad agent at Lake Charles, over the railroad company's wire, appellant could not be held responsible for any negligence. We do not think this assignment of error, under the facts of this case, is well taken. The railroad agent and the Western Union telegraph agent at Kountze is the same person. The same agent had just delivered a Western Union telegraph message from appellant's daughter to appellant, and he still had the Western Union telegram in his hand when he went to the Western Union agent and gave him the $5 and instructed him to telegraph it to his daughter. It is generally known that the Western Union Telegraph Company holds itself out as a dispatcher of messages and money for the general public for hire. Such is not the case or undertakings of railroad companies.

We think, therefore, that the appellee, J. F. Sims, would be warranted in presuming that his message and money was sent through the ordinary channel. The Western Union agent did not inform appellant that it was not a money office, nor that he was sending it by railroad wire. Appellant's third assignment of error is therefore overruled.

The judgment of the lower court is reformed, and judgment here entered for the appellee, for the sum of $5, with 6 per cent. per annum interest thereon from the 26th day of June, 1913, and for costs.